IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                            :
JAMES RIST,                                 :
                                            :
                          Plaintiff,        :          14-cv-6503 (ALC) (AJP)
                                            :
            -against-                       :
                                            :
HSBC SECURITIES (USA) INC.,                 :
                                            :
                          Defendant.        :
                                            :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

---

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION
## TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

---

Marc A. Susswein
James R. Hubbard
LIDDLE & ROBINSON, LLP
800 Third Avenue
New York, New York 10022
Phone: (212) 687-8500
Facsimile: (212) 687-1500
msusswein@liddlerobinson.com
jhubbard@liddlerobinson.com

*Attorneys for Plaintiff James Rist*

Dated: July 17, 2015

## TABLE OF CONTENTS

TABLE OF CONTENTS................................................................................................. i

TABLE OF AUTHORITIES ........................................................................................ ii

PRELIMINARY STATEMENT ....................................................................................1

STATEMENT OF FACTS .............................................................................................3

    A.    Rist's Exemplary Performance .....................................................................3

    B.    Rist Complains About the Sexual Harassment of Jane Doe .........................5

    C.    HSBC Retaliates Against Rist Following His Complaints of the
Sexual Harassment of Jane Doe...................................................................6

    D.    HSBC Demonstrates Retaliatory Animus...................................................10

    E.    Rist is Constructively Discharged ..............................................................12

STANDARD OF REVIEW ..........................................................................................12

ARGUMENT ................................................................................................................13

    I.    Rist's Prima Facie Case of Retaliation ................................................. 13

        A.    HSBC's Knowledge of Rist's Protected Activity...........................15

        B.    Rist Experienced Multiple Adverse Employment
Actions...........................................................................................17

        C.    A Genuine Factual Dispute Exists With Respect To Causal
Connection ......................................................................................19

    II.    A Genuine Dispute of Facts Exists on Rist's Constructive
Discharge Claim....................................................................................... 21

    III.    Rist's Retaliation Claim Under the NYCHRL.........................................25

CONCLUSION.............................................................................................................25

## TABLE OF AUTHORITIES

**Page No.**

**Cases**

*Ames v. Cartier, Inc.*, 193 F. Supp. 2d 762 (S.D.N.Y. 2002) ...................................................... 13

*Awad v. City of New York*, No. 13 Civ 5753 BMC, 2014 WL 1814114 (E.D.N.Y.
    May 7, 2014).......................................................................................................................... 17

*Bermudez v. City of New York*, No. 1:10-CV-1162 (ALC), 2015 WL 1500235
    (S.D.N.Y. March 15, 2015)  ................................................................................................. 12

*Blesdedell v. Mobil Oil. Co.*, 708 F. Supp. 1408 (S.D.N.Y. 1989)........................................... 22

*Burlington Northern & Santa Fe Ry. v. White*, 548 U.S. 53 (2006)........................................... 17

*Caban v. Richline Grp., Inc.*, No. 10 Civ. 559 ALC, 2012 WL 2861377 (S.D.N.Y.
    July 10, 2012)  ............................................................................................................. 12, 13, 14

*Celotex Corp. v. Catrett,* 477 U.S. 317 (1986) ......................................................................... 12

*Chan v. NYU Downtown Hosp.*, No. 03 Civ. 3003 (CBM), 2004 WL 213024
    (S.D.N.Y. Feb. 3, 2004)......................................................................................................... 20

*Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81 (2d Cir. 1996)............................................. 22

*Curcio v. Roosevelt Union Free Sch. Dist.*, No. 10-CV-5612 (SJF) (AKT), 2012
    WL 3646935 (E.D.N.Y. Aug. 22, 2012)................................................................................ 20

*De la Cruz v. N.Y.C. Human Res. Admin. Dep't of Soc. Servs.*, 82 F.3d 16 (2d Cir.
    1996) .................................................................................................................................. 17, 18

*E.E.O.C. v. Yenkin-Majestic Paint Corp.*, 112 F.3d 831 (6th Cir. 1997) .................................... 25

*Gordon v. N.Y.C. Bd. of Educ.*, 232 F.3d 111 (2d Cir. 2000) ..................................... 15, 16, 19, 21

*Hicks v. Baines,* 593 F.3d 159 (2d Cir. 2010)............................................................................. 18

*Jute v. Hamilton Sundstrand Corp.,* 420 F.3d 166 (2d Cir. 2005)............................................... 14

*Kachmar v. SunGard Data Sys.,*109 F.3d 173 (3d Cir. 1997) ...................................................... 20

*Kaytor v. Electric Boat Corp.*, 609 F.3d 537 (2d Cir. 2010) .................................................. 12, 13

*Kessler v. Westchester Cnty. Dep't of Soc. Servs.*, 461 F.3d 199 (2d Cir. 2006) ........................ 15

*Kirsch v. Fleet Street, Ltd.*, No. 92 Civ. 932 (JFK), 1993 WL 454240 (S.D.N.Y. Nov. 1, 1993) ................................................................................................ 2, 22

*Kwan v. Andalex Group LLC*, 737 F.3d 834 (2d Cir. 2013).................................. 13, 21

*Madera v. Metro. Life Ins. Co.*, No. 99 Civ. 4005 (MBM), 2002 WL 1453827 (S.D.N.Y. July 3, 2002) ............................................................................................ 20

*Martin v. State Univ. of New York*, 704 F. Supp. 2d 202 (E.D.N.Y. 2010)................................ 20

*Martinez v. New York City Dep't of Educ.*, No. 04 Civ. 2728 (LTS) (DFE), 2008 WL 2220638 (S.D.N.Y. 2008)......................................................................... 15

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) .................................. 14, 15

*Mihalik v. Credit Agricole Cheuvreux North America, Inc.*, 715 F.3d 102 (2d Cir. 2013)............................................................................................................... 25

*Millea v. Metro-North R.R.*, 658 F.3d 154 (2d Cir. 2011) .......................................... 17

*Ndremizara v. Swiss Re Am. Holding Corp.*, No. 12-CV-5769 (KMK), 2015 WL 1262146 (S.D.N.Y. Mar. 19, 2015) .................................................................. 15

*Pena v. Brattleboro Retreat*, 702 F.2d 322 (2d Cir. 1983) ......................................... 22

*Pennsylvania State Police v. Suders*, 542 U.S. 129 (2004) ...................................... 21

*Picarella v. HSBC Securities (USA) Inc.*, No. 14 CV 4463 (ALC) (AJP)................................... 21

*Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133 (2000)............................... 19

*Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11 (2d Cir. 2014) .......................... 17

*Scott v. Harris Interactive, Inc.*, 512 Fed. Appx. 25, 2013 WL 616489 (2d Cir. 2013)................................................................................................................ 22

*Terry v. Ashcroft*, 336 F.3d 128 (2d Cir. 2003) ...................................................... 2, 22

*Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S.Ct. 2517 (2013) ................................... 21

*Weiss v. JPMorgan Chase & Co.*, 332 Fed. Appx. 659 (2d Cir. 2009)................................. 19, 25

*White v. Dept. Corr. Services*, 814 F. Supp. 2d 374 (S.D.N.Y. 2011)........................... 17

*Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123 (2d Cir. 2004)................................. 17

*Woodman v. WWOR-TV, Inc.*, 411 F.3d 69 (2d Cir. 2005) ....................................... 15

*Zelnik v. Fashion Inst. of Tech.*, 464 F.3d 217 (2d Cir. 2006)................................... 18

## <u>Other Authorities</u>

42 U.S.C. §§ 2000e–3(a) ........................................................................................................... 13

Fed. R. Civ. P. Rule 56(a) ......................................................................................................... 12

## PRELIMINARY STATEMENT

In spring and summer 2012, James Rist, an HSBC Senior Vice President and Sales Trader, complained to HSBC that Eileen Hedges, HSBC's Head of Business Development, and two senior male HSBC Global Markets executives, had sexually harassed a 27 year old HSBC analyst (Jane Doe) who reported to Hedges, and was Rist's girlfriend. Following this protected activity, Rist's managers began a steady campaign of retaliation against him that continued until he was constructively terminated, and resigned on May 14, 2014 in favor of new employment.

Prior to this protected activity, Rist had received top performance ratings of "2-Outstanding" at HSBC, and was highly compensated. Immediately following his sexual harassment complaint, his performance rating was drastically reduced two levels, to "4-Inconsistent," and his compensation was severely cut.  His excellent performance had not changed; he was simply punished, like his co-worker Michael Picarella, for standing up for Doe by reporting the sexual misconduct of senior HSBC executives in Global Markets Sales.

Upon this background, HSBC's motion principally contests whether Rist has met his "minimal" burden of proving at the *prima facie* stage that a genuine dispute of fact exists regarding HSBC's knowledge of Rist's protected activity. Though HSBC denies that Rist complained that Doe had been sexually harassed, the motion does not contest that a dispute of fact exists on the knowledge element of the *prima facie* case.  HSBC asserts that the managers principally alleged to be the retaliators (McCormick, Domanko, and Busby) did not know of Rist's complaints that Doe had been sexually harassed, and thus had no knowledge of the alleged protected activity. There is ample evidence in the summary judgment record, however, that Rist complained to HSBC that Doe had been sexually harassed; that senior HSBC executives in Rist's chain of command knew he had complained; and that each of these managers knew Rist had complained that he was being retaliated against for his complaints, and thus knew that he had engaged in protected activity.

The second thrust of HSBC's motion is the assertion that Rist cannot establish a *prima facie* case of constructive discharge. To the contrary however, the summary judgment record contains substantial evidence that HSBC "intentionally create[d] a work atmosphere so intolerable" that Rist was "forced to quit involuntarily." *See Terry v. Ashcroft*, 336 F.3d 128, 151-52 (2d Cir. 2003). There is also substantial authority for the view that whether a plaintiff alleging constructive discharge "reasonably felt compelled to resign" is an issue that should not be determined on summary judgment, but is more properly determined by the trier of fact. *See Kirsch v. Fleet Street, Ltd*., No. 92 Civ. 932 (JFK), 1993 WL 454240, at *5 (S.D.N.Y. Nov. 1, 1993)

Rist's complaints to HSBC that Doe was sexually harassed were followed by a pattern of retaliation over the following twenty-four months, and complaints by Rist about that retaliation. The adverse actions Rist suffered are described in detail in the sections that follow. On May 2, 2014, Rist's managers notified him that he was being placed on a performance improvement plan that could result in termination of his employment. Based on the totality of the circumstances, Rist's working conditions at HSBC became so intolerable that he felt compelled to resign effective May 14, 2014, asserting the constructive termination of his employment.

Because the facts related to each of these issues are highly disputed, and because all reasonable inferences from them must be drawn in Rist's favor, HSBC has not met its burden of demonstrating the absence of genuine issues of material fact on Rist's retaliation claims, and is not entitled to summary judgment.

## STATEMENT OF FACTS

Rist obtained a Bachelor of Science degree from Southern Connecticut State University in 1986, with a major in Economics and a concentration in Finance. (RDecl. ¶ 2).[1] He was employed by Defendant HSBC from September 2010 until May 13, 2014 as a Senior Vice President and Emerging Markets Sales Trader in HSBC's Equity Finance Group. Prior to joining HSBC, Rist had 23 years of experience in the securities industry. (RDecl. ¶ 3). The objective given to Rist when he joined HSBC was to grow HSBC product sales in emerging markets, which included Latin America ("Lat Am").  (RDecl. ¶ 6); (Ex. 1).  His duties included marketing the bank's derivative products to new fund clients, and covering trades for existing clients. Warren McCormick, the Head of Equity Finance and Delta One for the Americas, was his direct supervisor.  McCormick in turn reported to Tom O'Leary, the Head of Equity Markets Americas. (RDecl. ¶ 5).

**A.      Rist's Exemplary Performance**

Upon joining HSBC, Rist was successful in developing cross-selling opportunities, securing new customers interested in transacting Lat Am products, and sales trading with existing customers. His work was highly praised by his managers and he received a substantial bonus for performance years 2010 and 2011. (RDecl. ¶ 10). McCormick rated Rist a "3-Strong" for 2010. (RDecl. ¶ 11); (Ex. 2). McCormick' review, highly complimentary, stated:

> [Rist has] quickly established himself as an extremely knowledgeable and well liked [sic] and respected member of the Equity Finance . . . team . . . [Rist] is hard working, a strong team player and is always willing to contribute ideas and assist his colleagues. In addition to establishing himself locally he has brought with him a number of high quality relationships and has built a strong reputation with the

---

[1] References to "RDecl." are to the Declaration of James Rist which is included as Exhibit 1 to the Declaration of Marc A. Susswein, dated July 17, 2015, filed in opposition to the Motion for Summary Judgment. References to "Ex." are to the exhibits cited in the Declaration of Marc A. Susswein.

global Equity Finance & Delta One management and Sales teams and with the Equities group in Brazil.

(RDecl. ¶ 11); (Ex. 2). Rist was paid a bonus of ███████ for his work in 2010, in accordance with

his offer letter; his base salary was ███████. (RDecl. ¶ 12); (Ex. 1); (Ex. 88).

Rist's excellent performance continued in 2011. On or about August 9, 2011, in his Mid-

Year Performance Review, McCormick rated Rist a "2-Outstanding:"

> [Rist] has had a very strong start to the year in both the dual roles of developing our Lat Am market access business and in selling our global footprint to US based customers . . . . [Rist] has firmly established himself as a driver of the EF&D1 Sales effort globally and has led a number of successful customer focused cross selling initiatives . . . . Overall I believe that [Rist] is a good team player, understands HSBC's position in the market and uses this information to sell and cross sell our products effectively. (RDecl. ¶ 13); (Ex. 3).

McCormick delivered Rist's 2011 Year End Performance Review on or about January 30,

2012, and Rist again received a top rating of a "2-Outstanding." The year-end review further stated:

> Overall [Rist] has had an outstanding 2011, he was successful in raising our profile directly with clients and the internal Sales forces and RM network . . . . He is well liked and respected by his colleagues and peers globally and plays an important role in the overall morale of the desk. *I believe he undervalues his contribution in this regard.*

(RDecl. ¶ 16); (Ex. 6) (emphasis added). In February 2012, in recognition of his performance,

HSBC paid Rist a bonus of ███████ for his work in 2011, which brought his total compensation

for 2011 to ███████.  (RDecl. ¶ 18); (Ex. 79).

In 2012, Rist's group was reorganized and expanded. HSBC hired an additional

salesperson, Ted Langworthy, as well as a new Managing Director and Head of Prime Service

Sales, Paul Busby. As part of this reorganization, Rist began reporting to Robert Domanko, the

Head of Institutional Equity Derivatives Sales, although McCormick continued to function as

Rist's supervisor. (RDecl. ¶¶ 42 & 45); (Ex. 20). HSBC also asked Rist to begin focusing on

revenue generation, and Rist was assigned a revenue generation target ("GNBV") for the first time in mid-2012. (RDecl. ¶¶ 14 & 17); (Ex. 11).

### B.    Rist Complains About the Sexual Harassment of Jane Doe

In early 2012, Rist began a personal relationship with Jane Doe, a 27-year-old analyst in Global Markets Business Development who was supervised by Eileen Hedges, the Head of Business Development. This relationship did not violate any HSBC policy because Rist was not Doe's supervisor, and Doe did not report to Rist in any respect. (RDecl. ¶ 21); (Ex. 103) (Weiss 5: 10-14; 61: 18-24). At the time Rist began his relationship with Doe, he was separated from his wife; their divorce proceedings were initiated in mid-2012. Shortly after Rist began dating Doe, he concluded that Hedges was sexually harassing Doe on a regular basis by, among other things, encouraging Doe to sleep with HSBC's clients and senior male executives. (RDecl. ¶ 22). In mid-April, Rist complained directly to Hedges about her sexual harassment of Doe and requested that she stop it. (RDecl. ¶ 24).

On April 18, 2012, Rist's ex-wife was admitted to HSBC's trading room floor without his knowledge. She proceeded to confront Doe on the trading room floor while Rist was at a meeting. (RDecl. ¶ 23). Ellen Weiss, an HSBC HR representative, spoke with Rist in late May regarding his ex-wife's appearance on the trading room floor, inquired about the nature of Rist's relationship with Doe, and Rist indicated they were in a romantic relationship.[2] (RDecl. ¶ 25). On May 31, 2012, Weiss met with Doe and later terminated her employment even though Rist's and Doe's relationship did not violate HSBC policy.[3] (RDecl. ¶ 26); (Ex. 103) (Weiss 5: 10-14; 61: 18-24).

---

[2] Shortly after Rist's meeting with Weiss and Whang, he received a written warning from HSBC regarding his ex-wife's presence on the HSBC trading floor. (RDecl. ¶ 29); (Ex. 13). Rist commented on the written warning that he "did not sign [his] wife in – nor did [he] have any idea she was coming to the office. [He] did not know she would be invited onto the floor or sit at [his] desk." (RDecl. ¶ 30); (Ex. 15).

[3] Suzy White, the Chief Operating Officer of HSBC Global Markets, later admitted to Rist that Doe's termination occurred under "questionable circumstances." (RDecl. ¶ 54); (Ex. 97) (Rist: 40: 9-10).

On June 1, 2012, Rist contacted Weiss to request a meeting. When Rist arrived at her office, Jennifer Whang, another HR representative, was also present. (RDecl. ¶ 27). Rist complained to Weiss that she had treated Doe unfairly by terminating her employment. He also complained to Weiss and Whang that Hedges and senior male HSBC executives had sexually harassed Doe, including at an HSBC conference in Key Largo, Florida in March that Rist had attended. (RDecl. ¶ 28). On July 5, 2012, Rist again complained to Whang that Doe had been sexually harassed:

> Rist reported how he saw HSBC's ███████████ reach over and grab Doe's rear end and that Doe pushed him away. Rist told Whang that while at the HSBC after-party, Rist was sitting at a table near the pool with HSBC's Head of US Credit Sales, and ██████████████████████. [Senior male HSBC executive] was talking to ██████ about how nice her boobs were when Doe walked over to their table. [Senior male HSBC executive] then turned to Doe  and said 'you have such a great ass, I swear, I would love to just bend you over, spread your ass cheeks and just munch away – I swear I would just bury my face in there and eat away for days.' Doe, taken aback, got up and walked away. (RDecl. ¶ 32).

Rist explained to Whang that he heard about Hedges' behavior from Doe, including that Hedges had encouraged Doe to have sex with HSBC's clients and executives at the Key Largo conference. Following HSBC's investigation into Hedges' conduct, Hedges was issued a Final Written Warning and her management responsibilities were removed. (RDecl. ¶ 35); (Ex. 21).

## C.   HSBC Retaliates Against Rist Following His Complaints of the Sexual Harassment of Jane Doe

After Rist complained about the sexual harassment of Jane Doe in 2012, his treatment by his HSBC managers deteriorated dramatically. His performance rating went virtually overnight from Outstanding, to Inconsistent, a major downgrade and negative rating. He found himself being harassed and verbally attacked by his managers, his sales responsibilities were removed, and he suffered drastic reductions in his compensation. Thus, the summary judgment record demonstrates that beginning in the second half of 2012, HSBC repeatedly retaliated against Rist by a pattern of

adverse actions and antagonism that did not end until he was constructively discharged in May of 2014. (RDecl. ¶¶ 36-37); (Ex. 90).

On or around July 20, 2012, following Rist's sexual harassment complaint to Weiss and Whang in June and early July, McCormick directed Rist to stop attending the HSBC bi-weekly Sales Manager meetings. The weekly Sales Manager meetings were attended by the senior sales leaders of the different divisions of HSBC. Rist's removal from the weekly Sales Managers meeting severely impacted his ability to generate cross-selling opportunities as it curtailed his access to new accounts that were already enrolled by HSBC and had the ability to trade immediately. (RDecl. ¶ 40); (Ex. 107); (Ex. 99) (McCormick 58: 11-14; 58:24 – 59:5).

At the same time Rist was removed from the HSBC bi-weekly Sales Manager meetings, he was told that he would no longer be able to participate in HSBC's bi-weekly Hedge Fund Focus meetings. (RDecl. ¶ 41); (Ex. 107). By excluding Rist from meetings about these ready-to-trade hedge funds, HSBC negatively impacted Rist's ability to generate revenue by denying him access to potential business opportunities with his target customers. (RDecl. ¶ 41).

In late 2012, McCormick and Busby instructed Rist to begin "introducing" his client accounts to Ted Langworthy. Langworthy had the same title, role, and position as Rist. Busby was responsible for allocating accounts among sales traders, including Rist, in the Equity Finance Group. (RDecl. ¶¶ 45-46). Busby also allocated accounts to Rist in an inequitable manner and removed accounts that Rist introduced to HSBC from Rist's coverage. (RDecl. ¶¶ 75 & 83).  By example, Busby removed Rist's clients ██████████ and ████████ from his coverage and reassigned them to Langworthy. He also assigned the ████████ account to Gabriel Santos after Rist introduced this client to HSBC. (RDecl. ¶ 82); (Ex. 86); (Ex. 67). Because the revenue generation of a sales trader is directly impacted by the quantity and quality of client accounts, this

reduction in Rist's account coverage at McCormick's and Busby's behest directly undermined his revenue production. (RDecl. ¶¶ 46-47).

In late August 2012, McCormick delivered Rist's Mid Year 2012 Performance Review. Rist's performance rating was dramatically reduced from a "2-Outstanding" to a "4 – Inconsistent." (RDecl. ¶ 48); (Ex. 23).  The decision to rate Rist a "4 – Inconsistent" came a short six months after Rist received a rating of "2 – Outstanding," and just weeks after his complaints to HR in June and July 2012 that Doe has been sexually harassed. (RDecl. ¶ 48). The review stated that

> [Rist] had a somewhat inconsistent start to the year in challenging personal circumstances but has shown that he is committed to the Group and to the product offering . . . . Whilst Lat Am revenues have been disappointing to all, including [Rist], [Rist] has begun to penetrate the ███████████████ and has made significant progress with ████████ generating strong revenues ytd and in the process convincing the customer to become a Prime Services client going forward, overcoming some significant internal hurdles in the process. I have no doubt that if [Rist] continues to demonstrate the focus and drive he showed with this customer across the product and wider client base the resultant p&l (and full year rating) will reflect this. (Ex. 23).

There was no credible basis for a major downgrade in Rist's performance rating from "Outstanding" to "Inconsistent" over this short six month period. Further, HSBC's assertion that Rist's "personal circumstances" had an effect upon his performance is baseless. The permissible inference is that the downgrade was in part retaliation for Rist's complaints of sexual harassment of Jane Doe, and in part to cover-up the termination of Doe's employment to protect Hedges.

In October 2012, COO White approached Rist while they were in Toronto, Canada on business and staying at the same hotel.  During this conversation, White threatened Rist about his communications with HSBC HR about the sexual harassment of Doe. White told Rist, among other things, that she knew all about him, that he wanted to be a Managing Director, and that his performance rating was recently downgraded from a 2 to a 4. White further stated that she knew about the complaints Michael Picarella had made to HR about the sexual harassment of Doe, and

-8-

that she heard about Rist's trips to HR concerning the same issues. White said that Doe was fired "under questionable circumstances," and further stated to Rist "you're out of it now, stay out of it. If HR calls or if you decide to go up to HR again, give me a call first." (RDecl. ¶¶ 52-54); (Ex. 97) (Rist 37:17 - 41:9).

Following White's comments, Rist requested a meeting with Mary Bilbrey, HSBC's Head of Human Resources. During this meeting Rist complained that he was being retaliated against because of his relationship with Doe, and the fact that he complained to HR that Doe had been sexually harassed by HSBC executives. Rist explained that he was being excluded by the business, treated in a hostile manner by McCormick, and that his manager, Domanko, would not talk to him. In response, Bilbrey referred Rist to another HSBC HR representative, Maria Malanga. (RDecl. ¶ 55); (Ex. 25).

Rist met with Malanga on October 17, 2012. During this meeting Rist told Malanga that he thought his poor rating and poor treatment was related to the fact that he provided witness to the investigation conducted by Weiss regarding Picarella and Doe. Rist further complained that the ongoing "reassignment" of client accounts to others was retaliation that was severely damaging his career at HSBC. (RDecl. ¶ 56). Toward the end of 2012, Whang met with Domanko, Fruhbeis and Busby and told them that Rist "felt he was being retaliated against." She then instructed them to notify her of any issues regarding Rist's performance. (RDecl. ¶ 59); (Ex. 101) (Whang 84:19-85:2; 86:9-92:10); (Ex. 99) (McCormick 200:10 – 20).

On February 15, 2013, Rist complained to O'Leary that "although [he] had approached [Busby] several times" about being included in Busby's pitches and introductions, Busby "will only interact with" Ted Langworthy. Rist further stated that "[b]ecause [he has] only been allocated

a few [accounts] that don't trade actively" he was "concerned that [he won't] be able to reach [his] gnbv targets." (RDecl. ¶ 61); (Ex. 35).

      Rist received his Year End 2012 Performance Review on or about February 26, 2013. His rating was "3." While McCormick drafted Rist's review, Whang, who was an HR officer and had no responsibility for supervising Rist, revised the narrative section of the review to change Rist's rating to a "weak 3." (RDecl. ¶ 62); (Ex. 38); (Ex. 40); (Ex. 39); (Ex. 41); (Ex. 99) (McCormick 216:22 - 217:7). Whang also edited Rist's review to dramatically reduce the amount of revenue generation attributed to Rist for 2012 from ████████ to ████████. (RDecl. ¶¶ 63 & 91). Contrary to HSBC's assertion, Rist performed well throughout 2012, outperforming the only other SVP in his group, Ted Langworthy. (Ex. 100) (Fruhbeis 33:10-12). Nevertheless, on February 27, 2013, his bonus was cut by 60%, from ████████ for 2011 to ████████ for 2012. (RDecl. ¶ 65); (Ex. 87).

## D.    HSBC Demonstrates Retaliatory Animus

      Toward the end of 2012 and throughout 2013, ████████ hostility towards Rist increased. ████████ verbally attacked Rist repeatedly in front of traders with whom Rist worked. (RDecl. ¶ 66). ████████ warned Rist's colleagues that Rist "is a bad guy," and a "bad influence" and that they should "stay away" from him. (RDecl. ¶ 67). On April 3, April 5, and April 15, 2013, Rist notified Bilbrey about ████████ constant verbal abuse and filed a formal grievance against ████████ (RDecl. ¶ 68); (Ex. 44); (Ex. 47). Rist met with Ann McGinley of HSBC HR on May 16, 2013 and provided her with information about the retaliation he was experiencing as part of her investigation into ████████ conduct. (RDecl. ¶ 69); (Ex. 90).

      McGinley's investigation confirmed that ████████ had created a hostile work environment in which Rist was targeted. (RDecl. ¶ 71); (Ex. 99) (████████ 30:23-31:8). At least three of Rist's colleagues who were interviewed by HR confirmed that Rist had been the focus of

█████████ hostility, that █████████ singled Rist out, that the conduct had escalated over time, that █████████ regularly berated Rist, and that █████████ looked for "any excuse to find fault with" Rist. (RDecl. ¶ 72); (Ex. 90). █████████ received a written warning as a result of his misconduct. (RDecl. ¶ 73); (Ex. 99) (█████████ 30:4-33:21). The only conceivable explanation for █████████ display of animus is in retaliation for Rist's protected activity – an inference to which Rist is entitled.

On August 8, 2013, Rist filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). In Rist's EEOC Charge, he detailed the retaliation he suffered due to his complaints about the sexual harassment of Jane Doe. (RDecl. ¶ 86); (Ex. 62). Around a month later, on September 20, 2013, Rist received his 2013 Mid Year Performance Review. Domanko had downgraded him to a "4" rating. Rist submitted a reply to this review in which he highlighted multiple inaccuracies. In his reply, which he submitted to Whang, Rist complained of being "excluded from all new account allocations, new account pitches and any sales desk dialog [while his] colleague Ted Langworthy [was] invited to all pitches and delegated all new swap accounts to cover." Rist also noted that he had already raised these complaints to O'Leary, Fruhbeis, Busby, Domanko, and Bilbrey. (RDecl. ¶ 87); (Ex. 86). Nevertheless, on or around February 24, 2014, Domanko gave Rist his 2013 Year End Performance that rated him a 4. Thereafter, Rist's 2013 bonus award was reduced to █████████, cut nearly sixty percent (60%) from his 2012 fiscal year bonus of █████████. (RDecl. ¶ 103); (Ex. 85).  Notably, despite HSBC's retaliatory conduct, and contrary to his Mid-Year 2013 rating and his 2013 bonus award, Rist's production was "maybe 75 percent higher" than Langworthy's in 2013. (Ex. 100) (Fruhbeis 33:5 – 33:17).

### E.    Rist is Constructively Discharged

HSBC placed Rist on a Performance Improvement Plan on May 2, 2014. (RDecl. ¶ 103). By this time, Rist had been removed from the Sales Manager meetings; removed from the Hedge Fund Focus meetings; directed to introduce his client accounts to a junior co-worker (Ted Langworthy); downgraded in his subsequent reviews and in compensation; downgraded in standing and career; verbally bullied and publicly embarrassed and isolated; threatened by White; harassed by McCormick; and subjected to constant harassment and criticism by his managers. (RDecl. ¶ 104); (Ex. 90). He was also aware at the time that his colleague, Picarella, was similarly being retaliated against for his protected activity. To prevent further damage to his career, Rist was compelled to seek other employment. He received an offer from ██████ which provided for a 20% reduction in his salary. Rist accepted the position and resigned from HSBC on May 13, 2014 due to the intolerable conditions to which he was being subjected. (RDecl. ¶¶ 105-106).

### STANDARD OF REVIEW

On a motion for summary judgment under Fed. R. Civ. P. Rule 56(a), "[t]he moving party has the burden of demonstrating 'the absence of a genuine issue of material fact.'" *Bermudez v. City of New York*, No. 1:10-CV-1162 (ALC), 2015 WL 1500235, at *7 (S.D.N.Y. March 15, 2015) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986)).[4] "Moreover, 'the court must draw all reasonable inferences in favor of the non-moving party . . . and may not make credibility determinations or weigh the evidence.'" *Caban v. Richline Grp., Inc*., No. 10 Civ. 559 (ALC), 2012 WL 2861377, at *6 (S.D.N.Y. July 10, 2012) (citing *Kaytor v. Electric Boat Corp*., 609 F.3d 537, 545 (2d Cir. 2010)). Accordingly, "summary judgment will be granted only if there is 'one reasonable conclusion as to the verdict, i.e., it is quite clear what the truth is.'" *Caban*, 2012 WL

---

[4] Unless noted, all internal citations and quotation marks are omitted, and all emphasis is added.

2861377, at *6 (quoting *Kaytor*, 609 F.3d at 546). The Second Circuit has recognized that special considerations come into play where a summary judgment motion involves the motivation and intent of the moving party. *See Kwan v. Andalex Group LLC*, 737 F.3d 834, 843 (2d Cir. 2013) (need for caution on summary judgment where dispute as to employer's intent). In a discrimination case, when "[e]vidence has been marshaled which supports both parties' assertions. . . [d]eciding which story to believe is the unique province of a jury." *Ames v. Cartier, Inc.*, 193 F. Supp. 2d 762, 773 (S.D.N.Y. 2002).

## ARGUMENT

HSBC has not met its burden of demonstrating the absence of genuine factual disputes on the central issues raised by its motion – HSBC's knowledge of Rist's protected activity, and Rist's constructive discharge. Though it disputes the existence of protected activity, HSBC does not contest that the summary judgment record contains ample evidence that Rist engaged in protected activity throughout 2012 by complaining about the sexual harassment of Jane Doe, and throughout 2013 and 2014 as he complained about the retaliation he experienced. The summary judgment record likewise contains substantial *prima facie* proof that HSBC and Rist's managers had knowledge of Rist's protected activity, sufficient to satisfy Rist's *de minimis* burden at this stage. The evidence in the summary judgment record also creates a material factual dispute over Rist's claim that he was compelled to resign and thus constructively discharged by the intolerable retaliation he suffered following his protected activity.

## I.    **Rist's Prima Facie Case of Retaliation**

Rist's Complaint asserts retaliation claims under Title VII and the New York State (NYSHRL) and New York City Human Rights Laws (NYCHRL). Under the "Opposition Clause" of Title VII, a covered employer is prohibited from [retaliating] against an employee "because [s]he has opposed any practice made an unlawful employment practice. . . ." 42 U.S.C. §§ 2000e–

3(a). The NYSHRL and the NYCHRL likewise make such retaliation unlawful. Retaliation claims under each statutory scheme are reviewed at the summary judgment stage under the burden-shifting approach of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973).  Under *McDonnell Douglas*, the plaintiff must first establish a *prima facie* case of retaliation, which requires the existence of genuine issues of fact on the following elements:

> (1) [T]hat [he] participated in a protected activity; (2) that [his] participation was known to [his] employer; (3) that [his] employer thereafter subjected [him] to a materially adverse employment action; and (4) that there was a causal connection between the protected activity and the adverse employment action.

*Caban*, 2012 WL 2861377, at *11. "The burden of proof at the prima facie stage is 'minimal' or 'de minimis.'"  *Id.* at *12; accord *Jute v. Hamilton Sundstrand Corp.,* 420 F.3d 166, 173 (2d Cir. 2005). If this initial burden of proof is met,

> [A] presumption of retaliation arises, and the burden shifts to the employer to articulate a legitimate, non-retaliatory reason for the adverse employment action. If the employer produces such evidence, then the employee must, in order to avoid summary judgment, show that retaliation was a substantial reason for the adverse employment action or that the proffered legitimate, non-retaliatory reason was pretextual.

*Caban*, 2012 WL 2861377, at *12.

HSBC does not dispute that the summary judgment record presents a genuine dispute of fact whether Rist engaged in protected activity by complaining about the sexual harassment of Jane Doe, and about retaliation. Rist complained to Hedges about the sexual harassment of Doe in April 2012 (RDecl. ¶ 24); to Weiss and Whang on June 1, 2012 (RDecl. ¶ 28); to Whang on July 5, 2012 (RDecl. ¶ 32); and to HSBC through the filing of his EEOC Charge of Discrimination on August 8, 2013 (RDecl. ¶ 87). He also complained repeatedly about the retaliation he was subjected to because of his protected activity – including to Bilbrey on October 15, 2012 (RDecl. ¶ 55); to Malanga on October 17, 2012 (RDecl. ¶ 56); to Malanga on October 24, 2012 (RDecl. ¶

58); to O'Leary on February 15, 2013 (RDecl. ¶ 61); to McGinley on May 16, 2013 (RDecl. ¶ 69); and to HSBC through the filing of his EEOC Charge.[5] (RDecl. ¶ 86).

### A.    HSBC's Knowledge of Rist's Protected Activity

HSBC relies upon *Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 87 (2d Cir. 2005), to argue that Rist is required to create a dispute of fact on whether the persons who actually participated in the adverse employment actions he suffered, including the retaliation, had knowledge of his complaints of Doe's sexual harassment. (Memorandum at 16, citing Facts ¶¶ 250-57) ("[plaintiff] was obliged . . . to offer evidence indicating that persons who actually participated in her termination decision had such knowledge" of her protected classification.) It then argues that the managers principally responsible for the adverse actions and retaliation Rist suffered – Busby, Domanko, and McCormick – had no knowledge of Rist's complaints of Doe's sexual harassment.

This issue is disputed by the evidence in the summary judgment record. First, it is not necessary for proof of corporate awareness at the *prima facie* stage that a plaintiff offer direct evidence that individual decision-makers within the company knew that a complaint had been made. "[T]o satisfy the knowledge requirement" nothing "more is necessary than general corporate knowledge that the plaintiff has engaged in a protected activity." *Gordon v. N.Y.C. Bd. of Educ.*, 232 F.3d 111, 116 (2d Cir. 2000); *accord Kessler v. Westchester Cnty. Dep't of Soc. Servs.*, 461 F.3d 199, 210 (2d Cir. 2006). Evidence of knowledge may be direct or circumstantial. *Woodman,* 411 F.3d at 83; *accord Ndremizara v. Swiss Re Am. Holding Corp.,* No. 12-CV-5769 (KMK), 2015 WL 1262146, at *7 (S.D.N.Y. Mar. 19, 2015).

The lack of knowledge on the part of particular *individual agents* is admissible as some evidence of a lack of a causal connection, countering plaintiff's circumstantial

---

[5] Complaints of retaliation for protected activity constitute protected activity themselves for purposes of a plaintiff's prima facie case in the *McDonnell Douglas* analysis. *Martinez v. New York City Dep't of Educ.*, No. 04 Civ. 2728 (LTS) (DFE), 2008 WL 2220638, *11 (S.D.N.Y. 2008).

evidence of proximity or disparate treatment . . . A jury, however, can find retaliation even if the agent denies direct knowledge of a plaintiff's protected activities, for example, so long as the jury finds that the circumstances evidence knowledge of the protected activities or the jury concludes that an agent is acting explicitly or implicit upon the orders of a superior who has the requisite knowledge . . . .

*Gordon*, 232 F.3d at 117.

There is also direct evidence that Rist's managers were notified that Rist had engaged in protected activity by complaining about the retaliation he suffered. The summary judgment record makes clear that Jennifer Whang of HSBC HR told McCormick, Damanko, and Busby at a year-end 2012 performance review meeting that Rist had complained that he was experiencing retaliation. (Ex. 101) (Whang 85:3 – 87:4; 91:19 – 24); Ex. 29 (HSBCRIST00004835 – 4837). Before Whang reported Rist's retaliation complaint to his managers, Rist had met with her on two occasions and complained to her that Doe had been sexually harassed by senior HSBC executives in Global Markets Sales, and she thus was aware of that protected activity. (RDecl. ¶¶ 27, 28, & 32). While HSBC argues that Whang understood Rist's complaints about retaliation to relate to the April 18, 2012 trading floor incident with his ex-wife. (Ex. 101) (Whang 88:2-18). The required inference at this stage, in Rist's favor, is the opposite – that the retaliation he complained of arose from the sexual harassment complaints he had previously presented to her. HSBC's inference – that Rist was being retaliated against because someone at HSBC let his ex-wife onto the trading floor when he was absent – makes no sense, is drawn in HSBC's favor, and is improper at this stage of the case. Whang's disclosure to McCormick, Domanko, and Busby that Rist had complained of retaliation provided them direct knowledge that Rist had engaged in protected activity.

### B.      Rist Experienced Multiple Adverse Employment Actions

Though not challenged by HSBC, the summary judgment record also contains substantial evidence that Rist was subjected to a series of adverse employment actions as the Statement of Facts (SOF) and accompanying Declaration of Rist reflects, in retaliation for his protected activity. The test for demonstrating an "adverse" employment action is now settled: a plaintiff "must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Millea v. Metro-North R.R.*, 658 F.3d 154, 164 (2d Cir. 2011), quoting *Burlington Northern & Santa Fe Ry. v. White*, 548 U.S. 53, 68 (2006). Material adversity is to be determined objectively, based on the reactions of a reasonable employee, and is not dependent, as HSBC contends, on whether Rist was in fact deterred from protected activity.  *See Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 25 (2d Cir. 2014). Viewing the evidence in light most favorable to Rist, and drawing all reasonable inferences in his favor, a reasonable jury could determine that the retaliatory acts about which he complained, separately and in combination, were sufficient to "dissuade a reasonable worker from making or supporting a charge of discrimination," and thus rose to the level of adverse employment actions. *White v. Dept. Corp. Servs.*, 814 F. Supp. 2d. 374, 389 (S.D.N.Y.2011), citing *Burlington*, 548 U.S. at 68.

Adverse employment actions include subjecting an employee to "significantly diminished material responsibilities." *Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 128 (2d Cir. 2004). They also include altering the terms and conditions of employment in a negative way").  *De la Cruz v. N.Y.C. Human Res. Admin. Dep't of Soc. Servs.*, 82 F.3d 16, 21 (2d Cir. 1996). *See also Awad v. City of New York*, No. 13 Civ. 5753 BMC, 2014 WL 1814114, at *3 (E.D.N.Y. May 7, 2014) (stripping of plaintiff's responsibilities supports inference that plaintiff suffered material adverse action). In considering whether a plaintiff has suffered an adverse employment action,

"the alleged acts of retaliation need to be considered both separately and in the aggregate, as even minor acts of retaliation can be sufficiently substantial in gross as to be actionable." *Hicks v. Baines,* 593 F.3d 159, 165 (2d Cir. 2010); *accord Zelnik v. Fashion Inst. of Tech*., 464 F.3d 217, 227 (2d Cir. 2006) (ridicule "part of larger campaign of harassment which though trivial in detail may have been substantial in gross").

Rist experienced multiple adverse employment actions, as revealed by the SOF, including (1) his removal from the weekly Sales Manager Meeting, the ISDA Priority Committee Meeting and the Hedge Fund Focus Group Meetings thereby negatively impacting his cross-selling and sales coverage opportunities[6]; (2) the loss of the Toronto, Canada employment opportunity; (3) the transfer away from Rist of account coverage and the manipulation down of his revenue generation numbers through the use of net revenue calculations in order to negatively impact Rist's performance reviews; (4) the negative performance reviews imposed in mid-year 2012;  mid-year 2013 and year-end 2013 despite Rist generating revenue at a level greater than Langworthy, (the salesperson on his desk who sold similar products as him); (5) the creation of a hostile work environment by ███████ (6) the reduction in Rist's bonus compensation from ███████ in February 2012, to ███████ in February 2013, to ███████ in February 2014; and (7) the cumulative effect of the foregoing conduct resulting in the constructive termination of Rist's employment with HSBC.

Finally, HSBC attempts to justify its adverse actions, including poor performance reviews and compensation cuts, with the argument that they were justified by poor performance from Rist as his job functions changed. This contention is highly disputed by the evidence of adverse actions and retaliation Rist suffered, which dramatically affected his ability to perform his assigned duties.

---

[6] *See De la Cruz v. N.Y. City Human Resources Admin. & Dep't of Soc. Servs.*, 82 F.3d 16, 21 (2d Cir.1996) (deeming transfer to less "elite" position with no change in pay but different job responsibilities an adverse action).

It is also pretext, because the performance evaluation process to which he was subjected was permeated by the retaliatory animus displayed by the summary judgment record. Thus, whether HSBC had legitimate, non-discriminatory reasons for the adverse actions identified here, or these reasons were not credible, and thus pretext, because they were the product of HSBC interference with Rist's duties, is a highly disputed genuine issue of fact for jury resolution.

### C.    A Genuine Factual Dispute Exists With Respect To Causal Connection

The last element of the *prima facie* case is evidence of causal connection between the plaintiff's protected activity and the adverse employment actions he suffered. HSBC does not contest this part of the *prima facie* case beyond disputing that Rist's managers had knowledge of his protected activity. Nevertheless, the pattern of retaliation and antagonism that follows Rist's repeated complaints during 2012 and 2013, first in reporting the sexual harassment of Jane Doe, then as he complained of HSBC's retaliation in 2012 and 2013, together with the evidence of retaliatory animus in summary judgment record, creates a clear dispute of fact on the existence of causal connection.

A plaintiff may establish a causal connection "(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Gordon*, 232 F.3d at 117. Rist has presented both direct and circumstantial evidence of causal connection in opposition to the motion.[7] There is evidence of retaliatory animus towards Rist by

---

[7] A plaintiff in a retaliation case is not "required to demonstrate bad faith in the form of direct evidence of discriminatory animus; a plaintiff may prove discriminatory animus through circumstantial evidence." *Weiss v. JPMorgan Chase & Co*., 332 Fed. Appx. 659, 663 (2d Cir. 2009) (citing *Reeves v. Sanderson Plumbing Prods., Inc*., 530 U.S. 133, 141 (2000)).

HSBC's managers. McCormick's hostility toward Rist in yelling at him in the office setting reflects a retaliatory animus. Furthermore, McGinley's investigation of ████████ reveals that Domanko told McGinley he viewed Rist's complaint against ████████ as "vindictive." (Ex. 98) (Domanko 77:19 – 78:3). Whang rewrote McCormick's draft performance review for Rist for Year End 2012 to downgrade his rating to a "weak 3," and reduced his revenue performance dramatically. (Ex. 99) (McCormick 216:22-217:7); (Exs. 38, 39, 41).  She told Domanko to keep records of "performance issues" for Rist. (Ex. 101) (Whang 84:7-85:2). "Negative reactions by an employer to a plaintiff's complaints of discrimination have been deemed indicative of retaliatory animus." *White*, 814 F.Supp.2d at 390 (supervisor yelled at plaintiff after learning she had filed EEOC charge). A supervisor's anger toward an employee upon learning the employee had complained about him is a display of retaliatory animus "by the very individual who made the decision not to renew the plaintiff," and is adequate to "satisfy the causation requirement at the prima facie stage." *Martin v. State Univ. of New York*, 704 F. Supp. 2d 202, 231 (E.D.N.Y. 2010).

Beyond this retaliatory animus by Rist's supervisors, the summary judgment record reflects a pattern of antagonism that followed his complaints of sexual harassment and retaliation. Such a pattern of antagonism existing between protected activity and adverse employment actions is circumstantial evidence of causal connection. *See Curcio v. Roosevelt Union Free Sch. Dist.*, No. 10-CV-5612 (SJF) (AKT), 2012 WL 3646935, at *14 (E.D.N.Y. Aug. 22, 2012) (pattern of antagonism in intervening period) (citing *Chan v. NYU Downtown Hosp.*, No. 03 Civ. 3003, 2004 WL 213024, at *3 (S.D.N.Y. Feb. 3, 2004)); *Kachmar v. SunGard Data Sys.,* 109 F.3d 173, 177 (3d Cir. 1997) (causation may be inferred from pattern of antagonism followed protected activity); *see also Madera v. Metro. Life Ins. Co.*, No. 99 Civ. 4005 (MBM), 2002 WL 1453827, a *7 (S.D.N.Y. July 3, 2002) (In light of corporate hostility towards plaintiff between his 1992 EEOC

complaint and his 1997 termination, though a significant time gap between his protected activity and the adverse actions, a rational jury could conclude that the circumstances give rise to an inference of retaliatory motive).

The fact that the plaintiff in a related case before the Court reported the sexual harassment of Jane Doe in the same time frame as Rist, and suffered similarly severe retaliation by HSBC senior management, also is substantial circumstantial evidence of causal connection between Rist's retaliation complaint and the series of adverse actions he suffered. *Gordon,* 232 F.3d at 117; (Ex. 119).[8] The direct and circumstantial evidence of causal connection in the summary judgment record is more than sufficient to meet Rist's *de minimis* burden at this stage of the case, and permit a reasonable juror to infer retaliatory motive.

HSBC also challenges Rist's ability to demonstrate that material issues of fact exist with respect to "but-for" causation under *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S.Ct. 2517, 2528 (2013). There is no requirement that he do so at this stage of the case. As the Second Circuit recently observed, "the determination whether retaliation for protected activity was a 'but-for' cause [of the adverse actions asserted] is particularly poor suited to disposition by summary judgment, because it requires weighing of the disputed facts, rather than a determination that there is no genuine dispute as to any material fact." *Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 846 n. 5 (2d Cir. 2013).

## II.    A Genuine Dispute of Facts Exists on Rist's Constructive Discharge Claim

The Supreme Court has held that a constructive discharge is "functionally the same as an actual termination" and is thus considered an adverse employment action under Title VII. *Pennsylvania State Police v. Suders*, 542 U.S. 129, 148 (2004).  An employee is constructively

---

[8] *Michael Picarella v. HSBC Securities (USA) Inc*., No. 14 CV 4463 (ALC) (AJP).

discharged when his employer, rather than discharging him directly, "intentionally creates a work atmosphere so intolerable that [s]he is forced to quit involuntarily." *Terry v. Ashcroft*, 336 F.3d 128, 151-52 (2d Cir. 2003). Working conditions are intolerable when, "viewed as a whole, they are so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." *Id*. In analyzing a claim of constructive discharge, "the effect of a number of adverse conditions in the workplace is cumulative." *Chertkova v. Conn. Gen. Life Ins. Co.,* 92 F.3d 81, 90 (2d Cir. 1996).

There is authority that constructive discharge "is not an issue to be determined on summary judgment. A determination whether [plaintiff] reasonably felt compelled to resign must be made on the basis of testimony provided at trial." *Blesdedell v. Mobil Oil. Co*., 708 F. Supp. 1408, 1420 (S.D.N.Y. 1989); *accord Kirsch v. Fleet Street, Ltd*., No. 92 Civ. 932 (JFK), 1993 WL 454240, at *5 (S.D.N.Y. Nov. 1, 1993) (determination whether plaintiff felt compelled to resign must be made by trier of fact and cannot be determined on summary judgment).

A significant reduction in compensation along with other aggravating factors can constitute adequate evidence of intolerable working conditions for purposes of a constructive termination. *See, e.g., Scott v. Harris Interactive, Inc.*, 512 Fed. Appx. 25, 2013 WL 616489, at *7 (2d Cir. 2013) (citing *Pena v. Brattleboro Retreat,* 702 F.2d 322, 325 (2d Cir. 1983) (constructive termination issue for jury where there was a reduction in plaintiff's salary by one-third from $220,000 to $150,000 accompanied by "adverse changes in his title and responsibilities" and plaintiff told he had the option to resign); *Kirsch*, 148 F.3d at 161 (upholding jury finding of constructive discharge where plaintiff's $60,000 compensation was reduced by 55% to $26,000 and primary account from which plaintiff generated 45% of his sales revenues was taken away from plaintiff).

HSBC constructively terminated Rist's employment by creating other intolerable working conditions.  Rist's mid-year performance rating was severely reduced by McCormick in August 2012 to a *"4-Inconsistent."* (Ex. 23). The performance rating also was pretextual because (1) Suzy White made clear the reduced rating was linked to Rist's sexual harassment complaints to HSBC human resources in her conversation with Rist in Toronto, Canada, (RDecl. ¶¶ 52 − 54); (2) the downgrade came shortly after Rist engaged in protected activity and was in stark contrast to Rist's prior reviews (Ex. 27, 28, & 32); (RDecl. ¶ 13); (Ex. 3); (RDecl. ¶ 11); (Ex. 2); and (3) the language of the review itself provided no factual basis for the downgrade other than general market Lat Am conditions impacting revenues for all. (Ex. 23). In February 2013, Rist received a year-end bonus for 2012 that was severely reduced from ███████ to ██████; a reduction of nearly 60% when compared to the bonus Rist received for 2011. (RDecl. ¶ 65); (Ex. 87).

Busby excluded Rist from customer meetings, from the allocation of customer accounts, and badmouthed Rist to his peers. (RDecl. ¶ 74, 77, & 78). HSBC set an objective for Rist to "start trading with █ new clients in a six-month period" in the face of Rist's managers' awareness of HSBC's commencement of Project ████ the process by which HSBC ████████████ ████████ (RDecl. ¶ 64). ████████ bullied Rist and undermined his performance by preventing Rist from bringing new clients into the bank, directing trades away to Rist's peers and verbally abusing and disparaging Rist in front of others. HSBC's record of investigation confirmed that ████████ had created a hostile work environment. (RDecl. ¶¶ 66 − 68); (Ex. 99) (████████ 30:23-31:8).

HSBC also transferred significant accounts away from Rist such as ████████ (which he originated) and ██████; and excluded him from meetings with ████████████, a client from whom he generated approximately ██████ annually in revenue, and HSBC suspended and

later terminated Rist's ability to take new orders from this client.  (Ex. 86); (Ex. 67); (Ex. 108); (Ex. 109); (Ex. 110).

In January, 2014 McGinley conducted an alleged investigation into Rist's complaints of retaliation "for submitting [a] claim with the EEOC and his involvement with the [Jane Doe] incident." McGinley primarily interviewed Rist's managers, i.e., those responsible for the retaliatory conduct, and concluded based on their denials that there was "no finding" of retaliation. (RDecl. ¶ 102) (Ex. 91). In March 2014, Rist received his end-of-year bonus for the 2013 fiscal year which was ████████, cut nearly sixty-percent (60%) from his 2012 fiscal year bonus of ████████. (Ex. 70); (Ex. 87).  HSBC placed him on a Performance Improvement Plan on May 2, 2014.  (Ex. 118).

In summary, by March 2014, Rist was removed from important sales committees; downgraded in his performance reviews, threatened by White, verbally harassed by McCormick, placed on a Performance Improvement Plan; had his compensation drastically reduced, removed from sales coverage, had his accounts unfairly allocated, had the calculation of his revenue sales credits conducted in a way to diminish his revenue production, and his retaliation complaints rejected by HSBC Human Resources. These conditions presented intolerable working conditions amounting to a constructive termination. On this basis, on May 13, 2014 Rist notified HSBC that he was involuntarily terminating his employment.  (Ex. 77); (Ex. 76).[9]

HSBC also asserts that its retaliatory conduct against Rist is protected as a legitimate expression of its business judgment. HSBC may not shield itself from liability under the

---

[9] HSBC relies upon *Butts v. N.Y.C. Dep't of Hous. Pres. & Dev.*, No. 00-CV-6307, 2007 WL 259937, at *21 (S.D.N.Y. Jan. 29, 2007) to argue Rist's delay in resigning his employment conditions were bad enough to force him to resign undermines his claim that his working conditions were intolerable, citing his deposition testimony at 130:24-135:12. (Def.'s Memorandum at 20). HSBC does not point out, however, that he testified that he made long efforts to address and resolve the harassment he experienced, and was not "ultimately" forced to resign until after those efforts had been exhausted, and became futile, two full years after June 2012.

discrimination laws by simply characterizing its conduct as a "business decision." *E.E.O.C. v. Yenkin-Majestic Paint Corp.*, 112 F.3d 831, 835 (6th Cir. 1997) (The "decision to terminate an employee based upon unlawful considerations does not become legitimate because it can be characterized as a business decision."); *see also Weiss*, 332 Fed. Appx. at 663.

## III. <u>Rist's Retaliation Claim Under the NYCHRL</u>

Courts are required to "analyze NYCHRL claims separately and independently from any federal and state law claims . . . construing the NYCHRL's provisions 'broadly in favor of discrimination plaintiffs . . . .'" *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 111 (2d Cir. 2013). The significant difference is that because of its broader scope, NYCHRL plaintiffs are not required to show "a material adverse action" but can prove their claim instead by showing that "the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action." *Id.* at 112. Because HSBC has failed to demonstrate the absence of a material dispute of fact with respect to Rist's prima facie proof, and in light of the substantial evidence of HSBC's retaliatory animus against Rist, HSBC's arguments addressed to the NYCHRL also fail under its broader scope.

## <u>CONCLUSION</u>

For the foregoing reasons, and based upon the foregoing arguments, Plaintiff James Rist respectfully prays that the Court enter its order denying Defendant HSBC's Motion for Summary Judgment.

Dated: July 17, 2015

/s/ Marc A. Susswein
  Marc A. Susswein
  James R. Hubbard

LIDDLE & ROBINSON, L.L.P.
800 Third Avenue
New York, New York 10022
Phone:  (212) 687-8500
Facsimile: (212) 687-1500
msusswein@liddlerobinson.com
jhubbard@liddlerobinson.com

*Attorneys for Plaintiff James Rist*